UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHRISTINE E.,[1]

    **Plaintiff,**

v().

    Case No. 2:22-cv-5119
    Magistrate Judge Norah McCann King

MARTIN O'MALLEY,
Commissioner of Social Security,

    **Defendant.**

# OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Christine E. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      **PROCEDURAL HISTORY**

On December 9, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since September 26, 2019. R. 116–17, 325–31.[3] The application was denied initially and upon reconsideration. R. 154–58, 160–69. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 170–71. ALJ Hilton Miller held a hearing on November 19, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 65–84 ("2020 hearing"). In a decision dated December 9, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 26, 2019, her alleged disability onset date, through the date of that decision. R. 127–37 ("the 2020 decision").

Plaintiff requested review by the Appeals Council of the 2020 decision and, on June 22, 2021, the Appeals Council vacated that decision and remanded the matter for resolution of the following issues:

- On November 23, 2020, prior to the date of the decision, the claimant submitted Medical records from The Neuro PTNR of Hudson County, PA, Ashish Kapoor, M.D, dated July 1, 2020 through November 9, 2020 (48 pages). These records were not exhibited; nor does the hearing decision or case processing information reflect consideration of their contents or whether to accept them. The decision states, "The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a))" (Decision, page 1). This source was listed on the claimant's Disability Report-Appeal as well as in a five-day letter (Exhibit B8E, page 4; B15E, page 1). Further consideration of these treatment records is warranted.

- The hearing decision residual functional capacity finding states that the claimant could work a job that involves even moderate exposure to odors, dusts, fumes, gases, poor ventilation, toxic dusts, chemicals, and other respiratory irritants (Finding 5). However, the decision also states, "Lastly, the undersigned restricts the claimant's exposure to pulmonary irritants due to the claimant's history of shortness

---

[3] Plaintiff had previously filed a claim for benefits, which was denied; that denial was upheld on September 25, 2019. R. 110.

of breath associated with chronic obstructive pulmonary disease and asthma" (Decision, page 10). The hypothetical question presented to the vocational expert stated that the individual should avoid even moderate exposure to odors, dusts, fumes, gases, poor ventilation, toxic dusts, chemicals, and other respiratory irritants (Hearing Testimony at 02:26:03 to 02:26:20). This appears to be a typographical error in the residual functional capacity finding. However, on remand, the Administrative Law Judge should further evaluate the claimant's maximum residual functional capacity, and clarify the environmental limitations.

Upon remand the Administrative Law Judge will:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). In so doing, consider, as necessary, whether the claimant submitted or informed the Administrative Law Judge about evidence no later than five business days prior to the scheduled hearing or whether a good cause exception applies to a late submission (20 CFR 404.935).

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

R. 144–45.

On remand from the Appeals Council, the ALJ held a hearing on September 23, 2021, at which Plaintiff, who was represented by counsel, testified, as did a medical expert and a vocational expert. R. 42–64 ("2021 hearing"). In a decision dated October 28, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 26, 2019, Plaintiff's alleged disability onset date, through June 30, 2021, the date on which Plaintiff was last insured for benefits. R. 21–34 ("the 2021 decision"). That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 24, 2022. R. 7–12. Plaintiff timely filed this appeal pursuant to

42 U.S.C. § 405(g). ECF No. 1. On April 17, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[4] On April 18, 2023, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.   THE 2021 DECISION AND APPELLATE ISSUES**

Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2021. R. 23. She was 45 years old on that date. R. 32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 26, 2019, her alleged disability onset date, and the date of the 2021 decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease, Crohn's Disease, gastric ulcers, and headaches. *Id*. The ALJ also that Plaintiff's carpal tunnel syndrome was not severe. R. 23–24.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–25.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 25–32. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a school bus monitor and receptionist. R. 32.

At step five, the ALJ found that a significant number of jobs–*e.g*., approximately 2,000,000 jobs as a marker, approximately 83,000 jobs as a mail clerk, and approximately 222,000 jobs as a photograph finisher–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 33–34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 26, 2019, her alleged disability onset date, through June 30, 2021, the date on which she was last insured. R. 34.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the 2021 decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 7; *Plaintiff's Reply Brief*, ECF No. 10. The Commissioner takes the position that his 2021 decision should be affirmed in its entirety because that decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9.

IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

On April 16, 2020, Arthur Pirone[5] conducted an initial review of Plaintiff's medical record on behalf of the state agency. R. 109–15. Dr. Pirone specifically considered the medical evidence as it appeared in the record at that time, which included, *inter alia*, medical notes dated May 20, 2019, reflecting mild spine tenderness / limited range of motion in the lumbar and thoracic spines as well as decreased range of motion in the buttocks; notes dated March 5, 2020, reflecting, among other things, cervical / lumbosacral tightness, normal range of motion in all joints, and a diagnosis of low back pain. R. 110–11. Dr. Pirone also noted that Plaintiff's symptoms were pain and weakness and opined that one or more of Plaintiff's medically determinable impairments could reasonably be expected to produce her pain or other symptoms and that her statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by objective medical evidence alone. R. 112. According to Dr. Pirone, Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of 4 hours; and sit for a total of about 6 hours in an 8-hour workday. R. 113. Asked to explain these exertional limitations and how the evidence supports these opinions, Dr. Pirone responded:

> 44 year old woman with the following impairments:
>
> 1. DDD of the cervical and LSS presenting with chronic neck and LBP managed conservatively.
> 2. Crohn's disease: Controlled and without complications.
> 3. Asthma/COPD: No recent exacerbations.
> 4. Tendinosis of left shoulder.
> 5. Migraine headaches without intractability or status migrainosus.
> 6. CTS.
> 7. GERD.

---

[5] Arthur Pirone's credentials are not clear in the record; however, the ALJ referred to him as "Dr. Arthur Pirone," R. 29, 31, and he has a specialty in orthopedics. R. 114–16. For ease of reference, the Court will refer to him as "Dr. Pirone."

10

> MER reviewed and pertinent positives noted. Limitations are based on the cumulative effects of established impairments, reasonable restrictions imposed by them, and as affected by pain and other symptoms.

*Id*. Dr. Pirone also opined that Plaintiff could occasionally perform the following postural activities: climbing ramps/stairs; climbing ladders/ropes/scaffolds; balancing; stooping (*i.e.* bending at the waist); kneeling; crouching (*i.e.* bending at the knees); and crawling. *Id*. He denied that Plaintiff had any manipulative, visual, or communicative limitations. *Id*. However, he went on to opine that Plaintiff had environmental limitations and must avoid concentrated exposure to extreme cold, extreme hot, wetness, and humidity, and must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. R. 113–14. In indicating which Medical-Vocational rule was used in his evaluation, Dr. Pirone identified Rule "201.27 – Sedentary[.]" R. 114. Dr. Pirone also cited SSR 83-12, which addresses exertional limitations within/between ranges of work. R. 123.

Mary Ann Nicastro[6] reviewed Plaintiff's medical record upon reconsideration for the state agency on August 10, 2020. R. 118–23. When considering the record evidence as it appeared at the record at that time, Dr. Nicastro specifically noted as follows:

> 44 yr. old alleging herniated disc, Crohn's disease, migraines, numbness in left arm, ulcer, anemia and b12 deficiency. On the initial level, clmts condition was restricted to sed type work, 4 stand/walking. On the recon level, clmt stated her condition has not changed, but she had additional treatment.
>
> Kessler, ov, 03/26/20, Initial eval.: Diagnoses: Spine. Low back. weakness. difficulty in walking.
>
> Neurology progress notes from 01/09/20 to 07/01/20 see bookmarks.

---

[6] Mary Ann Nicastro's credentials are also not clear in the record. The ALJ refers to her as "Dr. Nicastro," R. 29, 31, and she specializes in internal medicine. R. 122–23. For ease of reference, the Court will refer to her as "Dr. Nicastro."

11

> Medical records show that clmts condition restricts her to sed type work. Younger individual with a 12th grade education. Past work is expedited, clmt can do other work.

R. 119. Dr. Nicastro agreed with Dr. Pirone that Plaintiff's symptoms were pain and weakness; that Plaintiff's medically determinable impairments could reasonably be expected to produce her pain or other symptoms; and that her statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by objective medical evidence. R. 121. Dr. Nicastro also affirmed Dr. Pirone's RFC opinions, including, *inter alia*, that doctor's opinion that Plaintiff could stand and/or walk for a total of 4 hours. R. 121–22. Dr. Nicastro also referred to Rule 201.27 and to SSR 83-12. R. 123.

## V.   DISCUSSION

Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's RFC determination because, although the ALJ found that the opinions of the reviewing state agency consultants were persuasive, he failed to incorporate their opined limitations into the RFC, including, among other things, Plaintiff's limitation for standing/walking to only four hours. *Plaintiff's Brief*, ECF No. 7, pp. 7–14; *Plaintiff's Reply Brief*, ECF No. 10, pp. 1–3. For the reasons that follow, this Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only

12

"credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could lift and/or carry up to twenty pounds occasionally and ten pounds frequently. *The claimant could stand and/or walk with normal breaks for a total of <u>about six hours</u> in an eight-hour workday.* The claimant could sit with normal breaks for a total of about six hours in an eight-hour workday. The claimant could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. The claimant could occasionally balance, kneel, crouch, stoop and crawl. The claimant could work a job that does not involve hazards, such as dangerous machinery, motor vehicles, unprotected heights, or vibrations. The claimant could work a job that avoids even moderate exposure to odors, dusts, fumes, gases, poor ventilation, toxic dusts, chemicals, and other respiratory irritants.

R. 25 (emphasis added). In making this determination, the ALJ considered, *inter alia*, the opinions of the reviewing state agency consultants, Drs. Pirone and Nicastro, and found these opinions "persuasive[,]" explaining as follows:

> Dr. Arthur Pirone evaluated the claimant's records on behalf of DDS on April 16, 2020. (Ex. B3A/6) Dr. Pirone opined that the claimant *retains the capacity to perform <u>light work</u>*, and engage in all postural activities on an occasional basis. (Ex. B3A/5) Additionally, Dr. Pirone opined that the claimant must avoid concentrated exposure to cold, heat, wetness, and humidity. (Ex. B3A/5) Dr. Mary Ann Nicastro evaluated the claimant's records on behalf of DDS on August 10, 2020, and affirmed the opinions of Dr. Pirone, while adding that the claimant must avoid even

> moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Ex. B6A/4-5)[.]

R. 29 (emphasis added).

> The undersigned finds the opinions of Drs. Pirone and Nicastro to be *persuasive*. To recall, both of these physicians opined that the *claimant retains the capacity to perform **less** than light work*, with the ability to perform all postural activities on an occasional basis, but Dr. Nicastro emphasizing that the claimant must be restricted from all pulmonary irritants. *The undersigned concurs with this assessment*. The undersigned finds that the claimant could perform light work based on her retention of a normal gait (Ex. B12F/12, 18, 24, 30, 36, et. seq.; Ex. B18F/5, 12, 19, 28, 35; Ex. B22F/4) Further, the undersigned cites Dr. Tikoo's records, which denote that the claimant reveals normal bulk, tone, and strength in her upper extremities. (Ex. B3F/9) Additionally, the claimant retains full strength in all muscle groups and a normal range of motion in all joints. (Ex. B11F/5) The undersigned notes that Dr. Nicastro's opinion that the claimant should be restricted from pulmonary irritants to be consistent with the claimant's history of chronic obstructive pulmonary disease and asthma. (Ex. B1F/8; Ex. B9F/29-30)[.]

R. 31 (emphasis added).

In challenging the ALJ's RFC determination, Plaintiff argues that the ALJ, having found the state agency opinions to be persuasive, including, *inter alia*, the ability to stand/walk for only four hours, erred in concluding that Plaintiff could perform light work and had the ability, among other things, to stand/walk for six hours in an eight-hour workday. *Plaintiff's Brief*, ECF No. 7, pp. 8–10. Plaintiff contends that the ALJ rejected this limitation without explanation and failed to build a logical bridge between the findings of the reviewing state agency consultants and the RFC determination. *Id*. at 8–13 (citations omitted). Plaintiff further argues that the ALJ's failure to include this limitation in the RFC and to explain that finding is not harmless: The hypothetical posed by the ALJ to the vocational expert, which reflects the RFC ultimately found by the ALJ, does not reflect Plaintiff's ability to stand/walk and there is no vocational expert testimony as to whether including such a limitation would have significantly eroded the remaining occupational base of available jobs. *Id*. at 13–14.

14

For his part, the Commissioner—pointing to the 2020 hearing—appears to argue that any error on the part of the ALJ in the 2021 decision was harmless. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9, p. 13 (citing, *inter alia*, R. 130). In the 2020 decision, the ALJ actually adopted this four-hour stand/walk limitation and included that limitation in the hypothetical posed to the vocational expert at the 2020 hearing. *Id*. (citing R. 82). According to the Commissioner, "[d]espite this more restrictive hypothetical question, the vocational expert [at the 2020 hearing] also identified the position of mail clerk with an almost identical number of jobs — 82,030 as opposed to 83,000" and that "the vocational expert at the first hearing specifically testified that the marker position allows for a sit/stand option at will with no reduced number of jobs[.]" *Id*. (citing R. 61, 82–83).[7] The Commissioner goes on to argue that, with the benefit of additional medical records and the testimony of a medical expert at the 2021 hearing, the ALJ reasonably concluded that Plaintiff could stand/walk a total of six hours per workday, rather than just four hours. *Id*. (citing R. 25, 51–52, 130). According to the Commissioner, even if the ALJ had restricted Plaintiff to only four hours of standing and walking, "the vocational expert testimony in this case unequivocally demonstrates that Plaintiff could still perform the representative position of 'marker' that permits a sit/stand option at will and exists in significant numbers (82,030 or 83,000) in the national economy." *Id*. at 13–14.

In reply, Plaintiff contends that the Commissioner wrongfully relies on the 2020 decision, which was vacated and is therefore a legal nullity with no bearing whatsoever on the instant

---

[7] Although the Commissioner contends that "the vocational expert at the first hearing specifically testified that the *marker* position allows for a sit/stand option at will with no reduced number of jobs," *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9, p. 13 (citing R. 83) (emphasis added), review of that cited page reveals no such testimony regarding a marker position. *See* R. 83.

matter. *Plaintiff's Reply Brief*, ECF No. 10, p. 1. Plaintiff also disagrees with the Commissioner's argument that the job of "marker" would still be available to Plaintiff because it permits a sit/stand option. *Id*. at 2. In taking this position, Plaintiff points out that the ALJ's RFC determination in the 2021 decision does not provide for a sit/stand option at will, that the hypothetical posed to the vocational expert at the 2021 hearing did not contain a sit/stand option, and that there was no vocational expert testimony at the 2021 hearing regarding a sit/stand option at will. *Id*. Plaintiff therefore argues that the ALJ's failure to incorporate into the RFC the state agency physicians' opined limitation of standing/walking to four hours per workday—and the ALJ's failure to explain that omission after finding those opinions to be persuasive—resulted in harmful error. *Id*. at 2–3.

The Court concludes that this issue requires remand. *See Wright v. Comm'r of Soc. Sec.*, No. 3:20-CV-100, 2022 WL 1063157, at *4 (W.D. Pa. Apr. 8, 2022) (finding that the ALJ failed to, *inter alia*, "provide a clear and satisfactory explanation for the basis of its RFC determination" that the claimant could frequently reach overhead after finding a medical opinion that provided for only occasional reaching overhead "persuasive except with regard to the limitation on standing/walking") (internal quotation marks omitted); *Ferrebee v. Kijakazi*, No. 3:20-CV-02188, 2022 WL 905153, at *5 (M.D. Pa. Mar. 28, 2022) (stating that the Court could not conclude that substantial evidence supports the RFC determination where the ALJ "found the opinions of both psychologists to be 'persuasive, without any qualifiers'" yet the ALJ excluded an opined limitation "without any explanation whatsoever"). As detailed above, the state agency consultants opined, *inter alia*, that Plaintiff could stand/walk for only 4 hours in an eight-hour workday. R. 113, 121–22. Significantly, the ALJ specifically noted that these experts, whose opinions were "persuasive," had opined that Plaintiff could perform "less than light work" and

the ALJ expressly stated that he "concurs with this assessment." R. 31. Yet, the ALJ nevertheless concluded that Plaintiff could perform light work and crafted an RFC that provided, *inter alia*, that Plaintiff "could stand and/or walk with normal breaks for a total of six hours in an eight-hour workday." R. 25, 31. Notably, the ALJ never explained why, having found the opinions persuasive, he failed to include a limitation for walking and/or standing for 4 hours in an eight-hour workday. R. 31. Although an ALJ is free to consider the medical opinions in the record and to determine whether and to what extent those opinions are to be credited, the ALJ must in all events explain his reasoning in that regard. *Jones,* 364 F.3d at 505 (providing that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Cotter*, 642 F.2d at 704–05.

Moreover, the Court cannot conclude that this error is harmless. Light work involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . *[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (emphasis added). More specifically,

> [t]he regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. *A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position*. 'Frequent' means occurring from one-third to two-thirds of the time. *Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday*. Sitting may occur intermittently during the remaining time."

SSR 83-10 (emphasis added); *see also Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 119 (3d Cir. 1995) ("The [Commissioner] has further explained this definition [of light work in the DOT] in Social Security Ruling 83-10 by stating that light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day."); 20 C.F.R. § 404.1567(a) (explaining that sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met"); SSR 83-10 (explaining that "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, *periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday*, and sitting should generally total approximately 6 hours of an 8-hour workday") (emphasis added).

Although some work may be classified as "light" even when it permits sitting most of the workday, the ALJ in this case never asked the vocational expert whether the jobs identified by the vocational expert were such jobs. R. 58–64. There is simply no evidence that any of the light jobs identified by the vocational expert would permit standing or walking for only four hours in an eight-hour workday. *See id.*; *see also* SSR 83-10 ("Relatively few unskilled light jobs are performed in a seated position."). Where, as here, the ALJ initially accepted the state agency physicians' restriction to only 4 hours of walking/standing in an eight-hour workday, but then excluded that restriction from the RFC, the Court cannot, in the absence of some explanation by the ALJ, conclude that substantial evidence supports the ALJ's RFC determination. *See Jones,* 364 F.3d at 505; *Cotter*, 642 F.2d at 704–05; *Wright*, 2022 WL 1063157, at *4; *Ferrebee*, 2022

WL 905153, at *5; *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court therefore concludes that remand of the matter for further consideration of this issue is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of the opinions of the reviewing state agency consultants and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the state agency consultants' opinions and the RFC determination, the Court does not consider those claims. However, on remand, it would be helpful if the ALJ further considered Plaintiff's obesity. The ALJ received testimony from a medical expert, Dr. Steven Goldstein, at the 2021 hearing. R. 48–53. Dr. Goldstein specifically testified, *inter alia*, that Plaintiff's obesity was a severe medically determinable impairment. R. 50 (responding to the question which of Plaintiff's impairments are severe, that, *inter alia*, "I guess we could say the obesity is severe"). The ALJ expressly noted that Dr. Goldstein opined, *inter alia*, that "the claimant's degenerative disc disease, chronic obstructive pulmonary disease, and obesity are severe[.]" R. 26. The ALJ, however, never meaningfully discussed Plaintiff's obesity in the 2021 decision. *See generally* R. 21–34; *see also Plaintiff's Brief*, ECF No. 7, p. 19 (citing evidence regarding the purported effect of Plaintiff's obesity); *Plaintiff's Reply Brief*, ECF No. 10, p. 5 (same).

activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's 2021 decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 21, 2024                               *s/Norah McCann King*
                                                                       NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE